UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 13-24-HRW

ERICA L. HILL, *Individually*
*and as Administratrix of the*
ESTATE OF JIMMY LEE HILL                                              PLAINTIFF,

v.                        **MEMORANDUM OPINION AND ORDER**

SCOTT ADKINS, *Individually*
*and in his Official Capacity as a*
*Police Officer for the*
CITY OF WEST LIBERTY, KENTUCKY, *et al.*,            DEFENDANTS.

This matter is before the Court upon the Defendants' Motion for Summary Judgment [Docket No. 24]. The motion has been fully briefed by the parties [Docket Nos. 27 and 28] and for the reasons stated below, the Defendants' Motion for Summary Judgment will be sustained in part and overruled in part.

I.

This case arises from an incident which took place at the residence of Jimmy Lee and erica Hill on February 22, 2012 which resulted in the death of Jimmy Lee Hill.

On February 22, 2012, West Liberty police officers, Kelse Hensley and Scott Adkins appeared at the home of Jimmy Lee Hill and Erica Hill in response to a telephone call to the local 911 dispatch center. Ms. Hill testified that on the night before, Mr. Hill had been drinking heavily and she did not stay at the home. [Deposition of Erica Hill, Docket No. 21 at p. 26]. When she arrived home Wednesday morning Mr. Hill was intoxicated and was upset and accusing Ms. Hill of cheating on him. [*Id.* at p. 27]. Within an hour of returning home, she

called 911. [*Id.* at p. 32]. When asked by the 911 operator whether or not there were weapons in the home, Ms. Hill responded "Oh, there's a shitload". *Id.* Shortly after the call was placed Ms. Hill disarmed Mr. Hill (double barrel shotgun and .40 caliber Beretta). [*Id.* at p. 38]. Mr. Hill walked over and sat down with two knives and said "time to do this". Ms. Hill asked him not to. The West Liberty Chief of Police, Kelse Hensley, arrived and Ms. Hill met him at the door and walked out on the porch handing him two guns. [*Id.* at p. 39]. Mr. Hill was in the home armed with two knives. *Id.* She told Chief Hensley that there was no need for police involvement and asked that the police leave but the Chief insisted that there was a need to investigate and that he needed to speak with Mr. Hill. Chief Hensley opened the front door and was met by Mr. Hill who was standing inside the residence with a knife in each hand but with his hands at his sides and the blade of each knife pointed downward in the direction of Mr. Hill's back. *Id.*

At this time, Officer Scott Adkins was positioned several feet from the front porch.

When Chief Hensley attempted to enter the home to talk to Mr. Hill, Mr. Hill approached the door with both knives in hand and proceeded onto the porch toward Officer Adkins. According to Ms. Hill:

> "And they went to come in and talk to him and he was already meeting them at the door holding both knives like this (demonstrating by holding both arms bent at right angles with forearms parallel to the floor) He wouldn't quit walking towards him. I, like I said tried to grab the knife from him".
>
> "Scotty told him, said "Jimmy stop. Don't come any, don't, don't, come any further, put them down". And he (Mr. Hill) said "Scott your 9's not gonna do nuthin". And, he took another step and Scott shot him."

*Id.*

2

Mr. Hill immediately fell to the porch, gurgling, bleeding and unable to speak. *Id.*

Ms. Hill testified that at the time of the shooting, she believed Mr. Hill and Officer Adkins were 10 to 15 apart. [*Id.* at p. 47]. She stated that Mr. Hill never raised the knives; never pointed the knives and that his hands never left his side. *Id.*

The deposition of police Chief Kelse Hensley was taken April 14, 2014. He testified that the knives in Mr. Hill's hands were a Gurkha Machete and a stainless steel knife with a blade smaller than that of a machete. [Deposition of Chief Kelse Hensley, Docket No. 23 at p. 3]. He stated that Mr. Hill's weapons were in a dangerous posture and he was holding them like someone who was experienced. [*Id.* at p. 16]. He opined that the knives "were exactly where they needed to be to lunge an attack." *Id.* Chief Hensley heard Mr. Hill tell Officer Adkins "shoot me" and "that nine is not going to be enough". [*Id.* at p. 19]. Both he and Officer Adkins were instructing Mr. Hill to stop. *Id.*

Officer Scott Adkins testified that Mr. Hill had a large knife in his right hand and a smaller knife in his left. He was holding them down to his side. [Deposition of Scott Adkins, Docket No. 22 at p. 20]. He stated that Mr. Hill changed the position of the knives either just prior to exiting the doorway and stepping out or just after stepping out. [*Id.* at p. 21]. Mr. Hill had turned the knife "rearward" in his hand. He turned the position of the knife in his hand from facing outward to backward. He then went out onto the porch. At that point, Hensley is standing in the doorway. [*Id.* at p. 22].

Officer Adkins drew his gun when he realized that Mr. Hill was armed. [*Id.* at p. 24]. Officer Adkins had known Mr. Hill from his employment at the prison and knew that he had been in the military and was a part of the SORT team. [ *Id.* at p. 14]. He knew Hill had training

3

with respect to combat. [*Id.* at p. 15]. Officer Adkins recalled thinking that due to the training that Mr. Hill had, he wasn't sure of what he was capable of doing. *Id.*

Officer Adkins testified that he held his weapon towards Hill in a low ready position. When Mr. Hill first stepped out he said, "shoot me." Officer Adkins recalls that he took a step back and asked Mr. Hill to drop the weapons again. *Id.* Mr. Hill comply with the orders to drop the knives. At that point, according to Officer Adkins, Mr. Hill said "[t]hat pistol may not be enough," and took another step. [*Id.* at p. 25]. He didn't step off the porch. Officer Adkins estimates there was roughly 10 feet between them. [*Id.* at p. 26]. When Mr. Hill stepped to the edge of the porch, Officer Adkins fired a single round. *Id.*

Mr. Hill died as a result of the gunshot. Erica Hill, as the Administratrix of his estate, filed this lawsuit against Scott Adkins, in both his individual and official capacities and the City of West Liberty, Kentucky. In her Complaint, she asserted claims for (1) violation of constitutional rights under 42 U.S.C. 1983 by way of the Fourth and Fourteenth Amendments to the United States Constitution, (2) negligence, (3) assault and battery, and (4) loss of consortium.

Defendants seek summary judgment as to all claims alleged herein. Plaintiff concedes that the City of West Liberty is entitled to summary judgment and that Scott Adkins is entitled to summary judgment as to the claims against him in his official capacity. Remaining is the claim against Scott Adkins in his individual capacity for violation of 42 U.S.C. § 1983 as well as the state law claims alleged against him.

## II.

Under Fed.R.Civ.P. 56( c), summary judgment is appropriate "if the pleadings,

with respect to combat. [*Id.* at p. 15]. Officer Adkins recalled thinking that due to the training that Mr. Hill had, he wasn't sure of what he was capable of doing. *Id.*

Officer Adkins testified that he held his weapon towards Hill in a low ready position. When Mr. Hill first stepped out he said, "shoot me." Officer Adkins recalls that he took a step back and asked Mr. Hill to drop the weapons again. *Id.* Mr. Hill comply with the orders to drop the knives. At that point, according to Officer Adkins, Mr. Hill said "[t]hat pistol may not be enough," and took another step. [*Id.* at p. 25]. He didn't step off the porch. Officer Adkins estimates there was roughly 10 feet between them. [*Id.* at p. 26]. When Mr. Hill stepped to the edge of the porch, Officer Adkins fired a single round. *Id.*

Mr. Hill died as a result of the gunshot. Erica Hill, as the Administratrix of his estate, filed this lawsuit against Scott Adkins, in both his individual and official capacities and the City of West Liberty, Kentucky. In her Complaint, she asserted claims for (1) violation of constitutional rights under 42 U.S.C. 1983 by way of the Fourth and Fourteenth Amendments to the United States Constitution, (2) negligence, (3) assault and battery, and (4) loss of consortium.

Defendants seek summary judgment as to all claims alleged herein. Plaintiff concedes that the City of West Liberty is entitled to summary judgment and that Scott Adkins is entitled to summary judgment as to the claims against him in his official capacity. Remaining is the claim against Scott Adkins in his individual capacity for violation of 42 U.S.C. § 1983 as well as the state law claims alleged against him.

## II.

Under Fed.R.Civ.P. 56( c), summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997). In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III.

A. Qualified Immunity and Plaintiff's Claims Pursuant to 42 U.S.C. § 1983

In order to state a valid claim under 42 U.S.C. § 1983, Plaintiff must show that Defendant Adkins (1) violated one or more of his constitutional or federal statutory rights while (2) acting under color of state law. *See Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.2006). If a government official, including a police officer, performs a discretionary function, as here, the qualified immunity doctrine may bar the lawsuit and fully shield the official from liability. *See id.* at 536.

Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir.2007) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The

qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 847. In order to evaluate the threshold issue of whether Defendant Adkins is due qualified immunity under federal law, the Court must first determine whether he violated a constitutional or federal statutory right belonging to Mr. Hill and, if a violation occurred, whether he transgressed a "clearly established right." *See Heflin v. Stewart County, Tenn.*, 958 F.2d 709, 717 (6th Cir. 1992). In determining whether a constitutional violation based on excessive force has occurred, this Court applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir.2007) (*citing Graham v. Connor*, 490 U.S. 386, 395–96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Fox*, 489 F.3d at 236 (*quoting Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

In this case, there are factual disputes which bear directly upon the reasonableness of Officer Adkins' actions. First, Mrs. Hill further disputes Officer Adkins' estimate of distance between Mr. Hill and Officer Adkins at the time of the shooting. Mrs. Hill testified that she believed the distance was between 10 and 15 feet as opposed to 8 to 10 feet as stated by Officer Adkins. In addition, although Officer Adkins and Chief Hensley state that Mr. Hill said to

Officer Adkins, "Shoot me," Mrs. Hill states that she was on the porch with Mr. Hill and Chief Hensley and that she did not hear Mr. Hill say, "shoot me." Further, a factual dispute exists as to whether Mr. Hill was holding the knife in his right hand forward or backward.

Thus the Court is left with factual disputes over the reasonableness and the amount of force that was used. "When the legal question is completely dependent upon which view of the facts is accepted by the jury, the District Court cannot grant a defendant police officer immunity from a[n] [unreasonable] force claim." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir.1998) (internal quotation marks omitted); *see also Zar v. Payne*, 760 F.Supp.2d 779, 791 (6th Cir.2011) (*citing Sova* ). "This is especially true considering that the District Court must view the facts in the light most favorable to the plaintiff on a motion for summary judgment." *Sova*, 142 F.3d at 903. Accordingly, "the reasonableness of the use of force is the linchpin of the case," and that decision is subject to a jury's determination. *Id.* Qualified immunity is thus subject to the version of the facts the jury chooses to believe and liability cannot be determined by the Court. Therefore in this particular case, qualified immunity is subject to the version of the facts the jury chooses to believe and liability cannot be resolved by the Court at this juncture. As such, summary judgment is not appropriate.

Judge VanTatenhove's opinion in *Murray v. Pennington*, 2012 WL 3158805 (E.D. Ky.) is instructive. Plaintiff Murray was driving on a public road in Laurel County, Kentucky. Pennington, while on duty as a Kentucky State Police officer, stopped Murray's vehicle after he suspected Murray had improperly passed another vehicle. During the stop, Pennington ordered Murray to exit his vehicle. Some point after Murray got out of his vehicle, Pennington made a sweeping motion with one of his legs that knocked Murray's legs from underneath him causing

7

him to fall to the ground. Murray was then arrested for reckless driving and taken to Laurel County Detention Center where he stayed for approximately 11 hours. After his release from the detention center, Murray sought medical attention and discovered he had suffered broken ribs as a result of the fall caused by the leg sweep. A lawsuit followed, in which Murray alleged violations of 42 U.S. §1983. In seeking summary judgment, Pennington argued he was entitled to qualified immunity.

In considering the reasonableness of Pennington's actions, Judge VanTatenhove observed:

> Two different images exist regarding whether the use of the leg sweep was reasonable. In one image, Pennington thought Murray "was about to flee or resist arrest," and therefore needed to utilize the leg sweep to detain him. Further, he wanted to "prevent the possibility of having to pursue Murray on foot in the vicinity of traffic." In the other image, according to Murray, Pennington decided to use the sweep maneuver after he had already cuffed Murray and had threatened to physically harm him. Although the record does not clearly reflect Murray's recounting of the ordeal, there is still more than a "scintilla of evidence" to suggest the leg sweep was not reasonable. Besides Pennington's testimony that Murray "jerked away at some point" there is no proffered evidence that Murray was attempting to flee or that he was in any way threatening.

*Id.* at *6.

Judge VanTatenhove concluded, "[c]onsidering the factual dispute between Murray and Pennington as to what brought upon the leg sweep, it is evident the Court cannot rule on this claim as a matter of law." *Id.*

**B.    Qualified Immunity and Plaintiff's State Law Claims**

Plaintiff alleges that Officer Adkins' shooting of Mr. Hill constituted assault, battery and

8

negligence. Kentucky law provides public officials qualified official immunity from liability for "good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky.2001). Qualified immunity applies when public officials perform (1) discretionary acts, (2) in good faith, and (3) within their scope of authority. Id. If the act was discretionary and within the scope of authority, the burden shifts to the plaintiff "to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* at 523.

Again, factual questions exist as to whether Officer adkins acted in good faith. As such, summary judgment cannot be granted.

### IV.

Accordingly, **IT IS HEREBY ORDERED** Defendants' Motion for Summary Judgment [Docket No. 24] be **SUSTAINED** as it pertains to the City of West Liberty and to the claims alleged against Scott Adkins in his Official Capacity as a Police Officer for the City of West Liberty, Kentucky and **OVERRULED** as to the remaining claims.

This 18th day of November, 2014.



Signed By:
*Henry R. Wilhoit, Jr.*
**United States District Judge**